IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| NAVIGATOR HEARTLAND GREENWAY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STORY COUNTY, IOWA; STORY COUNTY BOARD OF SUPERVISORS; LATIFAH FAISAL, in her official capacity as a Story County Supervisor; LINDA MURKEN, in her official capacity as a Story County Supervisor; and LISA HEDDENS, in her official capacity as a Story County Supervisor,<br><br>    Defendants. | CASE NO. 4:23-cv-13<br><br>**COMPLAINT** |

COMES NOW the Plaintiff, Navigator Heartland Greenway LLC ("Navigator"), by and through its undersigned attorneys, submits the following Complaint against Story County, Iowa ("Story County"), the Story County Board of Supervisors (the "Board of Supervisors"), and Latifah Faisal, Linda Murken, and Lisa Heddens all in their official capacities as Story County Supervisors, (collectively, "Defendants"), stating as follows:

**NATURE OF THE CASE**

1. Navigator brings this action seeking declaratory and injunctive relief against the enforcement of Story County, Iowa Ordinance No. 306 (the "Ordinance") which purports to establish setback requirements for hazardous materials pipelines. (Exhibit 1).

2. The Ordinance violates and is preempted by federal law, including without limitation the Pipeline Safety Act ("PSA"), related rules promulgated by the Pipeline and

Hazardous Materials Safety Administration ("PHMSA"), and the Supremacy Clause of the United States Constitution because it impermissibly regulates safety and/or other areas.

3. The Ordinance also separately violates and is preempted by Iowa law, including without limitation Iowa Code Chapter 479B, which establishes the Iowa Utilities Board ("IUB") as the exclusive authority to implement certain controls over hazardous liquid pipelines to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline or underground storage facility within the state, to approve the location and route of hazardous liquid pipelines, and to grant rights of eminent domain where necessary, among other things, as well as it violates and is preempted by the IUB's own rules and regulations.

**PARTIES**

4. Plaintiff Navigator is a limited liability company organized under Delaware law with its principal place of business in Omaha, Nebraska, and is authorized to do business in Iowa.

5. Defendant Story County, Iowa is a county and governmental body under the laws of Iowa.

6. Defendant Board of Supervisors is the board of supervisors and governing body for Story County under the laws of Iowa.

7. Defendant Latifah Faisal is a supervisor on the Board of Supervisors and is a resident of Iowa. Ms. Faisal is sued only in her official capacity.

8. Defendant Linda Murken is a supervisor on the Board of Supervisors and is a resident of Iowa. Ms. Murken is sued only in her official capacity.

9. Defendant Lisa Heddens is a supervisor on the Board of Supervisors and is a resident of Iowa. Ms. Heddens is sued only in her official capacity.

**JURISDICTION & VENUE**

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Navigator's claims occurred in the Southern District of Iowa ("District").

11. The Court has personal jurisdiction over the Defendants as a result of their continuous and systematic contacts in the District.

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because some of Navigator's claims arise under federal law.

13. The Court has supplemental jurisdiction over Navigator's state law claims in this action under 28 U.S.C. § 1367 because Navigator's federal and state claims are so related that they form part of the same case or controversy.

14. This Court has the authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

**FACTUAL ALLEGATIONS**

**A.   Navigator's CO2 Pipeline**

15. Carbon dioxide ("$CO_2$"), a greenhouse gas, is a natural byproduct of numerous manufacturing processes, including ethanol production and fertilizer production.[1]

16. As a greenhouse gas, $CO_2$ poses substantial environmental concerns if released into the atmosphere in large quantities. Specifically, $CO_2$ absorbs and radiates heat, warming the planet and contributing to climate change and its disastrous effects. Increased atmospheric carbon dioxide is responsible for about two-thirds of the energy imbalance that is causing Earth's

---

[1] Uisung Lee, et al., *Using Waste CO2 from Corn Ethanol Biorefineries for Additional Ethanol Production: Life-Cycle Analysis* (Dec. 17, 2020) (available at https://onlinelibrary.wiley.com/doi/full/10.1002/bbb.2175).

temperature to rise, which has direct and cascading effects on many things including weather, plants and agriculture, disease, water, and ecosystems.[2]

17. Carbon capture and sequestration ("CCS") is a process which generally involves capturing $CO_2$ when it is generated and transporting it to a different location for safe storage.[3]

18. Navigator, its parent company, Navigator CO2 Ventures LLC, and other affiliated entities are developing an interstate $CO_2$ pipeline known as the Heartland Greenway Pipeline System ("HGPS") and related facilities for the purpose of CCS (collectively with HGPS, "Heartland Greenway").

19. The Heartland Greenway Pipeline System will traverse Iowa, Illinois, Minnesota, Nebraska, and South Dakota and transport captured $CO_2$ from a substantial number of emitting facilities for storage.

20. Heartland Greenway is being developed in two or more phases. The facts stated in this Complaint describe the first phase of the pipeline that is currently in development.

21. In Iowa specifically, the HGPS will cross 33 of the State's 99 counties, including Defendant Story County.

22. Heartland Greenway will allow facilities qualified under Section 45Q(d) of the Internal Revenue Code of 1986, as amended, to receive a tax credit for using carbon capture equipment to dispose of qualified carbon dioxide in "secure geologic storage." Internal Revenue Code of 1986, as amended, § 45Q(a).  Qualified carbon dioxide is defined as "carbon dioxide captured from an industrial source which (A) would otherwise be released into the atmosphere as

---

[2] Rebecca Lindsey, National Oceanic & Atmospheric Admin., *Climate Change: Atmospheric Carbon Dioxide* (June 23, 2022) (https://www.climate.gov/news-features/understanding-climate/climate-change-atmospheric-carbon-dioxide).

[3] United States Geological Survey, *What is Carbon Sequestration?* (last visited Nov. 9, 2022) (available at https://www.usgs.gov/faqs/what-carbon-sequestration).

industrial emission of greenhouse gas." PL 110-343, October 3, 2008, 122 Stat 3765, Facilities participating in Heartland Greenway that would fall within the definition of 45Q(d) include Iowa's ethanol, fertilizer, and agriculture industries.

23. Further, Heartland Greenway will benefit carbon emitters inside and outside of the State of Iowa, which will have benefits to all Iowans from the reduced carbon emissions. CCS is a crucial part of the ethanol industry's commitment to reducing carbon intensity to 70% lower than petroleum gasoline by 2030, and carbon neutrality by 2050,[4] and only with projects like Heartland Greenway can the ethanol industry achieve such ambitious goals.

24. For phase one of the project, Navigator and its affiliates have already secured agreements with 20 ethanol producers and one fertilizer facility along the planned pipeline route to support development of the HGPS that will have an initial $CO_2$ transportation capacity of approximately 10 million metric tons (MMt) per year. The carbon intensity score of the ethanol produced from plants using Heartland Greenway for sequestration can be reduced by as much as 50%,[5] making them more competitive in the low-carbon fuel markets that pay premiums for low carbon ethanol. Further, ethanol plants that wish to market their $CO_2$ to industrial end users will have a transportation option to reach customers in scale that may otherwise be too far for traditional trucking options to be economic in the quantities demanded for such uses. This economic savings will allow industrial users such as food processors to potentially lower their costs and provide more

---

[4] Isaac Emery, et al., *Pathways to NetZero Ethanol: Scenarios for Ethanol Producers to Achieve Carbon Neutrality by 2050*, at 2 (Feb. 14, 2022) (available at https://d35t1syewk4d42.cloudfront.net/file/2146/Pathways%20to%20Net%20Zero%20Ethanol%20Feb%202022.pdf ).

[5] Growth Energy, *Achieving Net-Zero Ethanol* (Sept. 2021) (available at https://growthenergy.org/wp-content/uploads/2021/09/GEBS-2021-04-Achieving-Net-Zero-Ethanol.pdf ).

cost-competitive products to the citizens of Iowa. $CO_2$ reduction by ethanol producers is crucial to the long-term survival and success of the industry.

25. Heartland Greenway will also strengthen the agriculture industry in general and specifically in Iowa. Economically, strong and durable ethanol and fertilizer plants benefit farmers. The ethanol industry is the largest purchaser of Iowa corn, consuming approximately 57% of Iowa's corn crop each year.[6] A stable ethanol industry provides Iowa's farmers with a reliable market for their corn and underpins the value of 26 million acres of Iowa farmland those crops are grown on. Furthermore, low-carbon fertilizer produced in Iowa can become a high-value input into crop production, and farmers can realistically expect that crops grown using such low-carbon fertilizer will command a premium over those using other higher-carbon inputs.

26. Heartland Greenway will also provide direct benefits to communities located along and near the system footprint. These benefits will include, but are not limited to, providing: temporary construction employment; full-time, local jobs to operate and maintain the pipeline; right-of-way (ROW) payments; additional sales tax revenues from the sale of goods and services during construction and long term operation and maintenance of the pipeline; annual State and local community revenue from property taxes; and long-term support of regional contractors, manufacturers, distributors, and retailers through ongoing purchase of goods and services to operate and maintain the pipeline system.

27. On October 25, 2022, Navigator filed a Petition for a Hazardous Liquid Pipeline Permit with the IUB under Iowa Code Chapter 479B ("Petition"). Before it filed its Petition, Navigator followed the procedures set forth in Iowa Code Chapter 479B and Chapter 13 of the IUB's administrative rules. Those procedures included, but were not limited to, determining a

---

[6] Urbanchuk, *Contribution of the Renewable Fuels Industry to the Economy of Iowa*, at 1.

potential route and "corridor" within which the HGPS is proposed to be located. As set forth in Navigator's Petition, parameters regarding the proposed route included numerous federal requirements.

28. Federal requirements guided the determination of the route – setback distances from inhabited structures, gathering places, and population centers based on initial modeling were established, and areas of known cultural resources, including federal and state registered locations, were avoided.

29. Once the route corridor was established, Navigator requested that the IUB hold informational meetings in all affected counties, as required by Iowa Code 479B.4(3) and 199 Iowa Admin. Code 13.2. The informational meetings were presided over by representatives of the IUB. After the IUB certified that Navigator met each requirement in Iowa Code Chapter 479B and 199 Iowa Admin. Code Chapter 13.2(6), Navigator was permitted to conduct surveys under Iowa Code 479B.15 and to negotiate with landowners.

30. Thirty days after the informational meetings were concluded, Navigator was allowed to file its Petition for a hazardous liquid pipeline. Iowa Code 479B.4(3). Navigator's Petition included detailed information required by federal and state law, including without limitation those requirements in Iowa Code 479B.5 and 199 Iowa Admin. Code 13.3. After an IUB staff review, discovery, and the receipt of written testimony, a public hearing will be held by the IUB to determine if Navigator should be issued a permit for a hazardous liquid pipeline. *See* Iowa Code 479B.6.

31. Navigator has already begun the process of surveying parcels along the proposed route for the project, securing necessary local, state, and federal permits, and working with landowners to obtain access to properties.

32.     Overall, Heartland Greenway will increase the economic strength and durability of Iowa's manufacturing sector, especially the ethanol and fertilizer industries, which in turn benefits employees, suppliers, communities, citizens, and governments in Iowa where the plants are located.  Heartland Greenway will also reduce the environmental impacts of fertilizer and ethanol production, grow Iowa's economy, and bolster the State's reputation as a leader in the energy sector.

**B.     Defendants' Ordinance**

33.     On October 25, 2022, Defendants passed the Ordinance, which amends Chapters 85 and 86 of the Story County Code of Ordinances ("Story Code").  (Exhibit 1).

34.     The Ordinance attempts to enact these amendments with the explicit purpose of "establish[ing] setback requirements for hazardous materials pipelines."  (Exhibit 1, at 1).

35.     The amendments to Story Code Chapter 85 add new definitions for, among other things, "Hazardous Materials" (to coincide with 49 C.F.R. § 172.101) and "Immediate Dangerous to Life or Health" (meaning "an atmospheric concentration of any toxic, corrosive, or asphyxiant substance that poses an immediate threat to life or would cause irreversible or delayed adverse health effect or would interfere with an individual's ability to escape from a dangerous atmosphere[.]").  (Exhibit 1, at 3).

36.     The amendments to Story Code Chapter 86 add Section 86.16 and require that Hazardous Material Pipelines meet substantial setback requirements.  (Exhibit 1, at 4–8).

37.     A specific formula is provided for $CO_2$ pipelines in the Ordinance.  (Exhibit 1, at 7).

38.     In a related memorandum prepared and published by Defendant prior to the passage of the Ordinance, Defendants acknowledge federal regulation in the area of pipeline safety and yet

explicitly state that the setback requirements are intended to "protect public health, safety, and welfare". (Exhibit 2, at 5).

39. The memorandum similarly acknowledges the IUB's authority to determine the location and route of such pipelines and yet explicitly states that the Ordinance is meant to dictate the route of pipelines to avoid certain structures. (Exhibit 2, at 3).

40. The memorandum also indicates that the intent of the Story County Board of Supervisors was to address safety concerns.

41. At the Story County Board of Supervisors meeting on October 18, 2022, Amelia Schoeneman, Planning and Development Director, explained the background and purpose of the Ordinance. Among other things, Ms. Schoeneman stated the Ordinance "regulat[es] … hazardous materials pipelines that … pose health and safety risks"[7] explaining that the Ordinance requirements were "based on health and safety concentration levels to ensure that there is adequate evacuation time."[8]

42. The Ordinance threatens to cause substantial damage to Navigator by dramatically altering the planned layout of the HGPS, causing undue delays in execution of the project, including, among other things, potentially a need for Navigator to notify new landowners, hold additional county meetings, and amend its Petition, creating undue financial hardship for Navigator and potentially landowners relating to inefficient routing, and/or making the project economically and practically impossible or nearly impossible to site in Story County in any efficient manner, resulting in severe financial harm.

---

[7] Audio of Story County Board of Supervisors Meeting starting at or around 53:25 (Oct. 18, 2022), accessible at https://www.storycountyiowa.gov/Archive.aspx?AMID=54.
[8] *Id*. starting at or around 57:45.

43. Further, if Navigator is not afforded relief here, any one of Iowa's other 98 counties may attempt to announce additional and potentially inconsistent regulations of their own, throwing Navigator's entire pipeline project into disarray and chaos. The federal and state frameworks, which were intended to create uniform requirements for pipelines, would be upended if counties could make their own rules in this field.

**C.    Federal Preemption**

44. Navigator's HGPS $CO_2$ pipeline is a hazardous liquid pipeline under both federal and state law.

45. Federal law exclusively regulates a number of aspects of hazardous liquid pipelines, including without limitation safety standards for hazardous liquid pipelines. See e.g., 49 U.S.C. § 60104(c).

46. Navigator's HGPS is subject to a number of federal regulations, including without limitation regulations and standards relating to safety of pipelines and the transporting of carbon dioxide.

47. As one example, the PSA gives the federal government exclusive authority to regulate interstate pipeline safety.

48. Congress enacted the PSA in 1994 "to recodify, without substantive change," the Natural Gas Pipeline Safety Act of 1968 and the Hazardous Liquids Pipeline Safety Act of 1979. *Tex. Midstream Gas Servs. LLC v. City of Grand Prairie*, 608 F.3d 200, 209 (5th Cir. 2010).

49. The PSA's purpose "is to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities." 49 U.S.C. § 60102(a)(1).

50. The United States Department of Transportation ("USDOT") must "prescribe minimum safety standards for pipeline transportation and for pipeline facilities", 49 U.S.C. §

60102(a)(2), "regulate carbon dioxide transported by a hazardous liquid pipeline facility", and "prescribe standards related to hazardous liquid to ensure the safe transportation of carbon dioxide by such a facility," 49 U.S.C. § 60102(i)(1).

51. The USDOT delegates its authority more specifically to the PHMSA. 49 U.S.C. §§ 108(a), 108(f).

52. The CO2 that would be transported through the HGPS is defined as a hazardous liquid under the PSA. 49 U.S.C. § 60101(a)(4).

53. Title 49, United States Code, Section 60104(c), subtitled "Preemption", explicitly states that "[a] State may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."

54. Like States, Counties do not have the authority to intrude on the federal government's exclusive authority in this area.

55. Defendants' attempt to regulate interstate pipeline safety and transportation of carbon dioxide under the Ordinance is preempted by federal law and is thus violative, improper, and injurious to Navigator.

**D. State Preemption**

56. Navigator's HGPS is also subject to a number of state regulations, including without limitation those in the Iowa Code and those promulgated by the IUB.

57. The IUB has exclusive authority over the location and routing of pipelines. *See e.g.,* Iowa Code § 479B.1; Iowa Admin. Code r. 199–13.

58. At the federal level, the PSA does not authorize the USDOT to prescribe the location or routing of a pipeline facility. 49 U.S.C. § 60104(e).

59. The authority to locate or route pipelines in Iowa is left to the State of Iowa and the IUB specifically.

60. The Iowa Legislature specifically authorized the IUB as the party "to approve the location and route of hazardous liquid pipelines". Iowa Code § 479B.1.

61. The IUB has promulgated extensive regulations detailing its approval of the location and route of such pipelines. *See, e.g.*, Iowa Admin. Code r. 199–13.

62. The Iowa legislature enacted Chapter 479B to grant the IUB the authority to implement certain controls over hazardous liquid pipelines to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline or underground storage facility within the state, to approve the location and route of hazardous liquid pipelines, and to grant rights of eminent domain where necessary. Iowa Code § 479B.1.

63. A pipeline company shall not construct, maintain, or operate a pipeline or underground storage facility under, along, over, or across any public or private highways, grounds, waters, or streams of any kind in this state except in accordance with Chapter 479B. Iowa Code § 479B.3.

64. The entire process for a pipeline company to construct, maintain, operate, or receive a permit for a pipeline in Iowa is set forth and governed by Iowa Code Chapter 479B and the IUB rules promulgated for such purpose.

65. Defendants or any other persons can file written objections with the IUB to the proposed construction, maintenance, operation, or application for a permit for a pipeline in Iowa or any other aspect of that pipeline, and many have done so already. Iowa Code § 479B.7 ("1. A person, ***including a governmental entity***, whose rights or interests may be affected by the proposed

pipeline or hazardous liquid storage facilities may file written objections. 2. All objections shall be on file with the board not less than five days before the date of hearing on the application. However, the board may permit the filing of the objections later than five days before the hearing, in which event the applicant must be granted a reasonable time to meet the objections.") (emphasis added). The IUB can consider any such objections at the hearing on whether to grant the requested permit.

66. Defendants' attempt to regulate pipelines in Iowa under the Ordinance, including the location and route of such pipelines, is preempted by state law and is thus violative, improper, and injurious to Navigator.

## COUNT I: FEDERAL PREEMPTION OF THE ORDINANCE

67. Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

68. Under the Supremacy Clause, "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

69. Thus, state and local laws, ordinances, and other regulations that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

70. Defendants' Ordinance is preempted by federal law in many ways, including without limitation 49 U.S.C. § 60104(c), which announces preemption of safety standards, and other related setback requirements for the purpose of regulating interstate pipeline safety.

71. The Ordinance is also preempted under applicable law, including the PSA and the regulations promulgated thereunder, due to the doctrines of express, field, and conflict preemption.

72. Defendants had no authority to issue the Ordinance, and it is invalid.

73. The Ordinance stands as an obstacle to accomplishing Congress' full purposes and objectives.

74. The Ordinance should be found and declared to be invalid, unenforceable, null and void, without effect, and preempted by federal law.

### COUNT II: STATE PREEMPTION OF THE ORDINANCE

75. Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

76. The Iowa Legislature granted the IUB authority to approve numerous issues relating to hazardous liquid pipelines in Iowa, including without limitation the location and routing of hazardous liquid pipelines.

77. Iowa Code Chapter 479B sets forth the exclusive process for pipeline companies to follow in Iowa in order to obtain a permit from the IUB to locate and construct a hazardous liquid pipeline in Iowa.

78. The setback requirements in Defendants' Ordinance are intended to, or have the effect of, dictating the location and routing of hazardous liquid pipelines in Story County.

79. These setback requirements and the procedures required in the Defendants' Ordinance cannot be reconciled with either the State's and IUB's exclusive duties to regulate, oversee, and approve the routing and location of the Navigator Pipeline.

80. Defendant's Ordinance is preempted by state law, including without limitation interfering with the IUB's duties and authority under Iowa Code Chapter 479B and Iowa Admin. Code r. 199–13.3.

81. The Ordinance is also preempted under applicable law, including Iowa Code Chapter 479B and the regulations promulgated thereunder, due to the doctrines of express, field, and conflict preemption.

82. The Ordinance would have the effect of making the route approved by the IUB illegal.

83. Under Iowa law, "a county's exercise of home rule power cannot be 'inconsistent with the laws of the general assembly.'" *Goodell*, 575 N.W.2d at 500 (quoting Iowa Const. art. III, § 39A). "The constitutional grant of home rule power is carefully qualified so as to withhold the grant of power where it conflicts with [a] state statute." *Id.* (citation and quotation marks omitted); *see also Mall Real Est., L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 195 (Iowa 2012) ("[L]egislative power trumps the power of local authorities when the legislature exercises its power." (citation and quotation marks omitted)).

84. Under Iowa law, local regulations and ordinances that conflict with or are irreconcilable with state law are preempted and invalid. *See Goodell*, 575 N.W.2d at 500–01; *Mall Real Est.*, 818 N.W.2d at 196; *Worth Cnty. Friends of Agric. v. Worth County*, 688 N.W.2d 257, 262 (Iowa 2004). When a "local ordinance would prohibit an activity absent compliance with the additional requirements of local law, even though under state law the activity would be permitted because it complied with the requirements of state law," then the regulation is "inconsistent with state law and preempted." *Goodell*, 575 N.W.2d at 501.

85. The Ordinance stands as an obstacle to accomplishing the Iowa Legislature's full purposes and objectives.

86. The Ordinance should be found and declared to be invalid, unenforceable, null and void, without effect, and preempted by Iowa law.

## PRAYER FOR RELIEF

Plaintiff Navigator Heartland Greenway LLC respectfully requests this Court enter judgment in its favor and against Defendants Story County, Iowa, the Story County Board of

Supervisors, and Latifah Faisal, Linda Murken, and Lisa Heddens all in their official capacities as Story County Supervisors on each and every claim set forth above and award it appropriate relief including, but not limited to, the following:

      a.      Order and declare that the Ordinance is preempted by federal and/or Iowa state law and is unlawful, invalid, unenforceable, without effect, and null and void as applied to Navigator's pipeline project;

      b.      Preliminarily and permanently enjoin Defendants from (i) enforcing or implementing the Ordinance; (ii) enforcing or implementing any other similar ordinances; and (iii) enforcing or implementing any resolution, ordinance, moratorium, ban, or other regulation that purports or intends to regulate any aspect of Navigator's HGPS project, including but not limited to those regarding safety or the location or routing of the pipeline;

      c.      Award Navigator its costs and reasonable attorneys' fees under Federal Rule of Civil Procedure 54 and any other applicable authority; and

      d.      An Order awarding all such other and further relief as this Court may deem just and proper under the circumstances.

Dated: January 11, 2023 Respectfully submitted,

*/s/ Brian Rickert*
Brian P. Rickert, AT0006633
James L. Pray, AT0006318
Samantha C. Norris, AT0009488
BROWN, WINICK, GRAVES, GROSS AND
BASKERVILLE, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: (515) 242-2400
Facsimile: (515) 242-2431
E-mail: brian.rickert@brownwinick.com
james.pray@brownwinick.com
samantha.norris@brownwinick.com

ATTORNEYS FOR PLAINTIFF NAVIGATOR
HEARTLAND GREENWAY LLC